Filed 3/7/25  P. v. Guzman CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TIRSO DEJESUS GUZMAN, JR.,<br><br>　　　Defendant and Appellant. | A164092<br><br><br>(Sonoma County Super. Ct. No. SCR-734484-1) |

　　　Tirso DeJesus Guzman, Jr., appeals from his convictions for sex-related offenses committed against three victims identified by pseudonyms.  With respect to his conviction for rape of a disabled person (Pen. Code § 261, subd. (a)(1))[1] and oral copulation of a disabled person (§ 287, subd. (g)), he challenges the sufficiency of the evidence that he knew or should have known that Jane Doe, who suffered from dementia, lacked the capacity to consent to sex.  In addition, he contends he is entitled to re-sentencing under sections 654 and 1170, subdivision (b), in connection with offenses committed against June Doe and Joan Doe.  Guzman further argues, and the People agree, that errors in the abstract of judgment must be corrected.  Although we reject Guzman's evidentiary challenge, we agree he is entitled to resentencing.  We therefore remand the case for resentencing and for correction of the abstract of judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

Because Guzman's convictions arise from separate interactions with each of his three victims, we briefly recount the factual background for each victim before discussing his aggregate sentence.

## A.

*Jane Doe (Counts 10 and 11)*

In counts 10 and 11, a jury found Guzman guilty of rape and oral copulation of an incompetent person, Jane Doe. (§ 261, subd. (a)(1); § 287, subd. (g).)

When the offenses were committed in September 2019, Jane Doe was 75 years old and had been suffering from cognitive impairment due to Alzheimer's disease for years.[2] Jane Doe lived on her own in an apartment complex for senior citizens, and several of her children resided nearby. Despite her dementia, Jane Doe went on walks near her apartment several times a day.

One day, Jane Doe reported to her daughter that a man had stayed overnight at her apartment and may have put his penis in her vagina. Jane Doe was interviewed by police as well as by a forensic interviewer who specialized in interviewing children and disabled people. During these interviews, Jane Doe struggled to respond to the questions she was asked. She displayed memory loss, provided disjointed, confused answers at times, and did not know the word "vagina." A sexual assault examination revealed that Jane Doe had suffered blunt force trauma resulting in a laceration and hematoma in and around her vagina. DNA material collected during the examination was later determined to belong to Guzman.

---

[2] Guzman was approximately 26 years old at the time.

Police arrested Guzman when he returned to Jane Doe's apartment a little over a week after she first reported the assault. He initially denied having sex with her, telling the police that he declined her overtures to have sex because it was "not right." However, in the same police interview, he subsequently admitted having had sex with Jane Doe, but he maintained the sex was consensual and denied that he had noticed that she was suffering from any significant memory issues.

## B.

### *June Doe (Counts one through four)*

With respect to June Doe, the jury found Guzman guilty of assault in the commission of first degree burglary with the intent to commit rape, sodomy, and oral copulation (§ 220, subd. (b); count one); rape by use of drugs (§ 261, subd. (a)(3); count two); oral copulation of a person prevented from resisting by use of a drug (§ 287, subd. (i), count three); and sodomy of a person prevented from resisting by use of a drug (§ 286, subd. (i); count four). In connection with the rape, oral copulation and sodomy counts, the jury found true allegations that Guzman had administered methamphetamine during the commission of each offense.

June Doe, who was 62 at the time, encountered Guzman in her neighborhood in June 2019, when he asked her on a date. Although she declined, she gave Guzman her telephone number because she was a driver for Uber and Lyft and he told her he might want a ride sometime. After Guzman called her later that day, June Doe agreed to drive him to Santa Rosa. Because it was dinner time and June Doe was on a strict eating schedule, she ended up bringing Guzman home for dinner; she planned to drive him to Santa Rosa after dinner.

After dinner at June Doe's house, however, Guzman put methamphetamine in her tea without her knowledge. When he

3

encouraged her to finish a cup of tea she had been drinking, June Doe took a big gulp of her tea, but it was oddly sweet. About 15 or 20 minutes later, she began feeling foggy and strange. Her skin felt tingly, her heart was beating fast, and she felt woozy and extremely sexually aroused. When June Doe asked if he had put anything in her tea, Guzman denied doing so. Over the course of several hours that night and into the next day, Guzman had June Doe orally copulate him once in the shower, and had vaginal intercourse with her several times as well as anal sex once in her bedroom. The next afternoon, Guzman left after Jane Doe's roommate told him to leave. Her roommate then called 911.

The authorities later determined based on a blood sample taken that same day that June Doe had ingested methamphetamine. June Doe had suction injuries or hickeys on her neck and breasts; petechiae, or "little red dots" indicating broken blood vessels, in and around her vagina; and lacerations and a "small round bruise" by her anus. DNA material found in her vagina and on her neck matched Guzman's DNA. When police showed her a photographic line-up containing photographs of six potential suspects, June Doe identified Guzman.

## C.

### *Joan Doe (Counts six, seven, eight, nine, and 12)*

In connection with Joan Doe, the jury found Guzman guilty of kidnapping to commit rape (§ 209, subd. (b)(1); count six); rape by use of drugs (§ 261, subd. (a)(3)); count seven); rape by use of force (§ 261, subd. (a)(2); count eight); sexual penetration by use of force (§ 289, subd. (a)(1)(A); count nine); and forcible sexual penetration by use of drugs (§ 289, subd. (e); count 12). As to count seven, the jury also found true allegations that Guzman administered a controlled substance to Joan Doe during the commission of the offense (§ 12022.75, subd. (b)(1)) and that he kidnapped her to commit a sexual offense (§ 667.8, subd. (a)).

4

With respect to counts eight and nine, the jury further found true allegations that Guzman kidnapped Joan Doe during the commission of the offense for purposes of a sentencing enhancement under the One Strike law (§ 667.61, subds. (a), (d)(2)).

The same day Guzman left June Doe's apartment, he approached Joan Doe around 10:00 p.m. She was stopped in her car, on the side of the road, and was drinking from a bottle of wine. She was feeling upset because earlier that evening, she learned that her roommate had rented her room out to someone else, and she no longer had a place to stay. Guzman asked her for a ride and got into the front passenger seat of her car. He offered her a drug in powdered form, which she snorted. After taking the drug, Joan Doe did not feel well, was unable to sit upright, and had trouble staying awake. Afterward, she could only recall flashes of memories of what happened that night.

In the early morning, Joan Doe woke up to Guzman having vaginal intercourse with her in the back of her car, which was parked in a field. She also felt something hard, like a key, being inserted into her anus. More than once, Joan Doe told Guzman to stop, but he did not stop until he ejaculated. Eventually, as she regained sobriety, she was able to get Guzman to get out of her car and leave.

Joan Doe later called 911 and reported what had happened. She had pain and bruising in her anus and bruises, scratches, lacerations, and suction injuries elsewhere on her body. Joan Doe subsequently identified Guzman from a photographic array. DNA material found in her vagina matched Guzman.

### D.

According to his presentence report, "on the advice of defense counsel," Guzman declined to comment on his offenses or the impact on his victims. The day of his sentencing, Guzman

elected not to attend the hearing, and he declined the opportunity to participate by video. The trial court found that Guzman had "voluntarily absented himself" from the sentencing hearing. The court then sentenced Guzman to an aggregate term of 33 years and eight months, plus an indeterminate term of 57 years to life in prison.

## DISCUSSION

### A.

Guzman challenges the sufficiency of the evidence that he knew or reasonably should have known that Jane Doe lacked the capacity to consent to sex due to a mental disorder, for purposes of his convictions for rape of a disabled person and oral copulation of a disabled person (counts 10 and 11). (*See* § 261, subd. (a)(1); § 287, subd. (g).) We reject his argument.

A person is incapable of consent if the person " ' "is unable to understand the act, its nature, and possible consequences." ' " (*People v. Lewis* (2023) 14 Cal.5th 876, 895 (*Lewis*).) The question is whether the person's " ' "intellectual, emotional, social, [and] psychological" ' " resources are sufficient to make the decision whether to engage in sexual acts with another. (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1413 (*Miranda*).) We review the whole record in the light most favorable to the judgment, and we must affirm the convictions so long as a rational trier of fact could have concluded that Jane Doe was incapable of giving consent. (*Miranda,* at pp. 1411-1412.)

The evidence here is more than sufficient.

First, it is undisputed that Jane Doe was suffering from significant cognitive impairments. Dr. Christine Naber, a neuropscyhologist, testified that by the time of the offenses at issue, Jane Doe was suffering from "significant loss of function" due to cognitive deficits caused by Alzheimer's disease, including "significant" memory loss, language deficits, and communication

6

difficulties that would be "obvious to a lay person." Because of her memory loss and language deficits, Jane Doe tended to lose track of the conversation, provide non-responsive information, have difficulty recalling words, and repeat herself frequently. She could not learn or retain information. Jane Doe had difficulty recalling the faces of people she had met. She also suffered from executive functioning deficits, which prevented her from making logical connections and thinking abstractly. Her judgment and social cognition—her ability to interpret vocal tone and facial expressions and understand another person's motives—were impaired. Based on Dr. Naber's assessment, Jane Doe's global cognitive functioning was at less than 0.1 percentile, meaning that 99.9 percent of people her age globally functioned better than she did. Dr. Naber also testified that because Alzheimer's is a progressive disease that causes atrophy of brain tissue, based on the level of severity of Jane Doe's impairment in September 2019, it would not be expected that there would have been extended periods when she was lucid, without displaying symptoms of her cognitive impairment.

Second, the jury had plenty of evidence to determine that Guzman, who spent two days and nights with her, should have known Jane Doe lacked the capacity to consent. The jury saw videos of her speaking with police and undergoing a forensic interview shortly after the September 2019 offenses, and testifying during the January 2020 preliminary hearing. In these settings, Jane Doe's cognitive impairment was immediately apparent. When the police asked her whether she could remember where the incident took place, she responded, "Well it wasn't that far away. It was more east," even though she subsequently stated that she thought it happened in her apartment. Within the first few minutes of the interview, Jane Doe was uncertain about where she lived, responding "I think I slept with [my daughter], I mean in [my daughter's] house ah today." When asked whether she was familiar with the name of

7

her apartment complex, Jane Doe responded, "I think so." She provided a disjointed account and struggled to recall any details, repeatedly stating she was not sure or could not remember what happened. She told police, "it's almost like it's flying away from me." She also made incoherent statements, such as "Now this, this one that was evil in a way. Where did he go to I don't understand [¶]. . .[¶] what happened."

The forensic interviewer, Shannen Fraley, testified that "immediately it was obvious to [her] there were significant cognitive issues," including both memory loss and impaired word recall. Within minutes of the interview starting, Jane Doe became "very vague" and "[v]ery confused" when asked to talk about her grandchildren and was unable to recall how many grandchildren she had, stating that she had "at least six" grandchildren. She asked Fraley, "I guess do I have a great grandchild?" Soon after the forensic interview started, she was also unable to recall the name of the housing complex at which she resided, telling Fraley, "I live ah right near the main ah the main building in, in the, what would I call it? At the place there." Jane Doe followed up by telling Fraley, "it's . . . that place where they're [a] lot of elders um."

During the forensic interview, Jane Doe provided disjointed, sometimes incoherent, irrelevant, or non-responsive statements. She struggled to provide a sequence of events or timeline. She could not recall what the perpetrator looked like, his name, whether they went on a walk or ate food together, or how he ended up leaving her apartment. She did not know the word for vagina at times and instead had to use a marker to indicate on a paper image of a female body where the defendant had put his penis. She knew the word for penis at times, but at one point during her forensic interview she had to ask Fraley what the word was.

8

The jury also heard evidence that Jane Doe's cognitive deficits affected her day-to-day activities in obvious ways. She sometimes left the house in inappropriate clothing, such as wearing tights as if they were pants, wearing a shirt over a jacket, or putting her clothes for the day on over the clothes she was already wearing. She was no longer able to shop for groceries, pay her bills, or handle money. On one occasion Jane Doe forgot how to turn off the stove, and, when she called her daughter for help, she could not recall the word "stove." At times, she had to call her upstairs neighbor because she was cold but she could not figure out how to work the thermostat. Jane Doe's neighbors described her as "well-compromised with dementia." Doe's upstairs neighbor described her as "very childlike." The same neighbor reported that she was not able to have a conversation with her about anything of significance because Jane Doe would "get lost in just a typical everyday conversation."

Indeed, Guzman himself suggested that he was aware of Jane Doe's deficits. During a police interview, Guzman initially stated that, although Jane Doe wanted to have sex with him, he refused because it was "not right." When asked whether Jane Doe knew his name, Guzman responded: "I told her my name but she [forgot] she said."

The evidence easily supports the jury's finding. (See *Miranda, supra,* 199 Cal.App.4th at pp. 1415-1416.)

**B.**

Guzman next challenges his sentence on several offenses committed against Joan Doe, arguing that he is entitled to resentencing based on an intervening amendment to section 654. We disagree.

At the time of Guzman's sentencing, section 654 mandated that when "[a]n act or omission . . . is punishable in different ways by different provisions of law," the defendant "shall be

9

punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a), as amended by Sen. Bill No. 914 (1997-1998 Reg. Sess.), Stats. 1997, ch. 410, § 1, eff. Sept. 15, 1997.) In practical terms, a sentencing court applying section 654 will impose the sentence for one offense while staying the imposition of the sentence on the other offense to avoid double punishment. (*See People v. Caparaz* (2022) 80 Cal.App.5th 669, 689 (*Caparaz*).)

The trial court determined that section 654 prohibited punishing Guzman for all three of the rape-related offenses concerning Joan Doe: kidnapping to commit rape (§ 209, subd. (b)(1); count six); rape by use of drugs (§ 261, subd. (a)(3)); count seven); and forcible rape (§ 261, subd. (a)(2); count eight). The court imposed the sentence for count eight, which carried the longest term, and selected a sentence of 25 years to life in prison under the One Strike law (§ 667.61, subd. (a)), an alternative sentencing scheme that mandates harsher sentences for specified forcible sex offenses. (*See People v. Williams* (2024) 17 Cal.5th 99, 117 (*Williams*).) The court then stayed the sentences for the remaining rape counts against Joan Doe, counts six and seven. Similarly, the trial court determined that section 654 prohibited punishment for both forcible sexual penetration (§ 289, subd. (a)(1)(A); count nine) and forcible sexual penetration by use of drugs (§ 289, subd. (e); count 12). The court imposed the punishment for the longest term, a sentence of 25 years to life in prison for count nine, under the One Strike Law (§ 667.61, subd. (a)), and stayed the sentence for the remaining forcible sexual penetration count, count 12.

Effective January 1, 2022, however, Assembly Bill No. 518 amended section 654 so that imposition of the longest sentence is no longer mandatory. Section 654 now provides: "An act or

omission that is punishable in different ways by different provisions of law may be punished under *either* of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), as amended by Assem. Bill No. 518 (2021-2022 Reg. Sess.), Stats. 2021, ch. 441, § 1, italics added.) Thus, section 654 now grants the sentencing court discretion to choose which punishment to impose and execute when the defendant's act or omission is potentially punishable under more than one provision of law. (§ 654, subd. (a); *see also People v. Mani* (2022) 74 Cal.App.5th 343, 379-380 (*Mani*).)

Guzman contends that his case should be remanded to allow the trial court to determine whether to exercise its discretion to stay the 25 years to life sentences for counts eight and nine, while imposing the shorter sentences for counts six, seven, and 12. The People acknowledge that Assembly Bill No. 518 applies retroactively to cases like Guzman's that are not yet final. (*See In re Estrada* (1965) 63 Cal.2d 740, 744-745.) But the People contend that Guzman is nonetheless ineligible for resentencing under section 654, as amended, because counts eight and nine are subject to the One Strike law. The People argue that the One Strike law mandates that Guzman receive sentences of 25 years to life for the offenses in those counts. (*See* § 667.61, subd. (a).)

Specifically, the People maintain that section 667.61, subdivision (h), prohibits a court from staying the imposition of a One Strike sentence because it provides that "[n]otwithstanding any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, a person who is subject to punishment under this section." Whether section 667.61, subdivision (h)'s prohibition on suspending the imposition of a One Strike sentence would bar a sentencing court from *staying* imposition of such a sentence is the subject of a split

11

in the courts of appeal. *Caparaz* held that section 667.61, subdivision (h), precludes staying or suspending a One Strike sentence under section 654 because a stay is a type of suspension. (*Caparaz*, *supra*, 80 Cal.App.5th at pp. 689-690.) *People v. Govan* (2023) 91 Cal.App.5th 1015 (*Govan*) disagreed, concluding that section 667.61, subdivision (h), applies only to the probation context. (*Govan*, at pp. 1033-1034.) *Govan* reasoned that sentencing courts grant probation by suspending the imposition of the defendant's sentence or by imposing the sentence but suspending its execution. (*Id.* at p. 1033.)

We need not resolve this disagreement, however, because section 667.61 requires the sentencing court to select an applicable One Strike sentence unless another law provides for a longer sentence. As relevant here, section 667.61, subdivision (a), mandates that "[e]xcept as provided in subdivision (j), (l), or (m)[3], a person who is convicted of" an offense involving specified circumstances covered by the One Strike law "*shall be punished* by imprisonment in the state prison for 25 years to life." (§ 667.61, subd. (a), italics added; *see also In re Vaquera* (2024) 15 Cal.5th 706, 723 [explaining that "the provisions of the One Strike law generally are mandatory"].) The One Strike law sets "a floor—a minimum term a qualifying defendant must serve," but it "does not preclude imposing sentence . . . under another statute prescribing greater punishment." (*People v. Acosta* (2002) 29 Cal.4th 105, 124 (*Acosta*).) As *Acosta* observed, section 667.61, subdivision (f), recognizes that when the prosecution establishes the minimum number of circumstances required for a One Strike sentence, the punishments specified in the One Strike law " 'shall' " be imposed " 'unless another law provides for a greater penalty.' " (*See Acosta*, at p. 124, italics omitted.) Thus, although

---

[3] The enumerated exceptions provide for longer terms of imprisonment in certain circumstances where the victim was a minor. (§ 667.61, subds. (j), (l), (m).)

section 654, subdivision (a), now provides that a defendant whose criminal act is punishable under more than one law "may be punished under *either* of such provisions" (italics added), section 667.61 sets the applicable One Strike sentence as the minimum punishment.

Notably, after amending section 654, the Legislature enacted technical amendments to section 667.61, but it did not add any exemption based on section 654. (*See* Stats. 2021, ch. 626, § 31 [Assem. Bill No. 1171 (2021-2022 Reg. Sess.), eff. Jan. 1, 2022].) Section 654 lacks any language suggesting the Legislature intended the statute to control over contrary laws. (*See In re Greg F.* (2012) 55 Cal.4th 393, 406 [explaining that the Legislature typically uses " 'notwithstanding any other law' " or similar language to indicate a statute is meant to supersede conflicting laws].) Absent some indication from the Legislature of its intent to allow lesser punishment in this context, we may not invent an exception to the One Strike law, particularly where, as here, an exception favoring lesser punishments would run counter to the law's original purpose of increasing the penalties for aggravated sex offenses. (*See Williams*, *supra*, 17 Cal.5th at pp. 117-121.)

## C.

With respect to counts one through four, for offenses committed against June Doe, Guzman raises a separate argument under section 654 that resentencing is required because he cannot receive multiple punishments for offenses that were all part of one course of conduct. We agree.

In connection with June Doe, Guzman was convicted of assault with intent to commit rape, oral copulation, and sodomy during the commission of first degree burglary (§ 220, subd. (b); count one); rape by use of drugs (§ 261, subd. (a)(3); count two); oral copulation by use of drugs (§ 287, subd. (i); count three); and sodomy by use of drugs (§ 286, subd. (i); count four). The trial

court sentenced him to consecutive terms on the four counts: seven years to life on count one; 13 years on count two; 13 years on count three; and three years, eight months on count four. Guzman maintains that because the assault was committed for the purpose of committing the sex offenses, the assault was part of the same course of conduct as the sex offenses and therefore he may not be punished both for the assault and for the sex offenses.

Under section 654, a criminal defendant who commits multiple independent acts can be punished for each distinct criminal act. (*See, e.g., People v. Correa* (2012) 54 Cal.4th 331, 341 (*Correa*) [section 654 does not prohibit multiple punishments where the defendant commits multiple, distinct sexual assaults, even if they occurred during a brief period].) But a criminal defendant may not receive more than one punishment for a single act, nor may a defendant receive multiple punishments for acts that comprised a single, indivisible course of conduct in service of a single objective. (*People v. Perez* (1979) 23 Cal.3d 545, 550-552 (*Perez*); *see also Correa*, at p. 336.) If all the offenses in a course of conduct "were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Perez*, at p. 551; *see also Correa*, at p. 336.) The defendant's intent and objectives are questions of fact reviewed for substantial evidence. (*See People v. Jackson* (2016) 1 Cal.5th 269, 353–354; *People v. Brents* (2012) 53 Cal.4th 599, 618.) In applying section 654, the trial court is bound by any fact findings necessary to the jury's verdict. (*See People v. Siko* (1988) 45 Cal.3d 820, 826 (*Siko*); *see also People v. Mesa* (2012) 54 Cal.4th 191, 196; *People v. Carter* (2019) 34 Cal.App.5th 831, 842.)

Applying these standards, our Supreme Court held that a defendant who committed arson as the means of accomplishing murder could not be punished for both arson and murder. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved of on other grounds by *Correa, supra,* 54 Cal.4th at p. 334.) In that

14

circumstance, "the arson was merely incidental to the primary objective of killing," so punishing the defendant for both arson and murder violated section 654. (*Neal*, at p. 20.) *People v. Latimer* (1993) 5 Cal.4th 1203 similarly held that where a defendant kidnapped his victim solely to facilitate raping her, section 654 prohibited punishing him for both the kidnapping and the rape. (*Latimer,* at p. 1205.) And *People v. Hensley* (2014) 59 Cal.4th 788 (*Hensley*) held that where the defendant's only objective in shooting the victim was to rob her, the defendant could not be punished for both attempted murder and robbery. (*Id.* at p. 828; *see also People v. Liakos* (1982) 133 Cal.App.3d 721, 725 (*Liakos*).)

The People argue that it was lawful for the trial court to impose consecutive sentences for the assault and the three sex offenses because the offenses took place over an extended period of time and at different locations in June Doe's house. Consistent with the People's position on appeal, the trial court found at sentencing that Guzman "remained with each of his victims for an extended period of time, with breaks in between each separate and distinct act. He could have stopped his sexual assault of each of them at any time during these breaks, but instead, he repeatedly returned to each of them for further sexual gratification."

But the People's argument fails to account for the jury's factual finding that Guzman assaulted June Doe for the single purpose of committing the sex offenses against her. (*See Siko*, *supra*, 45 Cal.3d at p. 826.) The jury's verdict on count one found that the assault was committed "with the intent to commit rape, sodomy, oral copulation, *and* a violation" of other provisions not at issue here. (Italics added.) The jury thus necessarily found that Guzman's intent in committing the assault was to commit all three sex offenses: rape, sodomy, *and* oral copulation. The jury's finding was consistent with the trial court's instruction

15

that to find Guzman guilty of assault, the jury had to find that "when the defendant acted, he intended to commit rape, sodomy *and* oral copulation." (Italics added.) In light of the jury's verdict, the trial court erred in implicitly finding that there were separate objectives for the assault and the sex offenses.

In a closely analogous situation, *Liakos* held that the defendant could not be punished both for assault and for oral copulation and attempted rape, where the assault was committed to facilitate the two sex offenses. (*Liakos*, *supra*, 133 Cal.App.3d at p. 725.) Similarly here, because the assault was committed for the single purpose of facilitating the sex offenses at issue in counts two, three, and four, section 654 precludes Guzman from being punished both for the assault and for the three sex offenses as a matter of law. (*See Hensley*, *supra,* 59 Cal.4th at p. 828; *Liakos*, at p. 725.) It must be one or the other.

## D.

Guzman next challenges his sentences for counts two (§ 261, subd. (a)(3); June Doe), three (§ 287, subd. (i); June Doe), and seven (§ 261, subd. (a)(3); Joan Doe). He contends he is entitled to resentencing on these counts due to a subsequent amendment to section 1170, subdivision (b), that constrains the trial court's discretion to impose a maximum prison term. (*See* Sen. Bill No. 567 (2021-2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022; *People v. Lynch* (2024) 16 Cal.5th 730, 773 (*Lynch*).) We remand for resentencing.

## 1.

When the trial court sentenced Guzman, section 1170, subdivision (b), granted the court discretion to choose between the lower, middle, and upper terms applicable to an offense based on which term "best serves the interests of justice." (§ 1170, former subd. (b), enacted by Stats. 2007, ch. 3, § 2, pp. 6-7.) The court selected the upper term for each of the three counts at issue

16

here.  In so doing, the court found no mitigating circumstances were applicable, and the court relied on three aggravating factors: the offenses involved a high degree of cruelty and callousness, each of the victims was particularly vulnerable, and the defendant showed no remorse for his actions.

After a 2022 amendment by the Legislature, section 1170, subdivision (b), now creates a presumption against the upper term.  (*See Lynch*, *supra*, 16 Cal.5th at pp. 742, 773.)  It provides that "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subds. (b)(1)-(2).)

It is common ground between the parties that the amendments to section 1170, subdivision (b), apply retroactively to Guzman's case because the judgment is not yet final.  (*See Lynch*, *supra*, 16 Cal.5th at pp. 748-749; *In re Estrada*, *supra,* 63 Cal.2d at p. 745.)  Further, the People concede that none of the aggravating circumstances relied upon by the trial court were found true beyond a reasonable doubt or stipulated to by Guzman.  Where, as here, the trial court based its selection of an upper term sentence on unproven aggravating facts, under section 1170, subdivision (b), the sentence violates the Sixth Amendment.  (*Lynch*, at p. 769.)

**2.**

The People maintain that a remand for resentencing is unnecessary, however, because the outcome would be the same even under the amended version of section 1170, subdivision (b).  To the contrary, Guzman is entitled to a remand in the circumstances here.

17

As our Supreme Court explained in *Lynch*, we apply the rigorous *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) standard of review to determine whether the trial court's reliance on unproven aggravating circumstances was prejudicial. (*Lynch*, *supra*, 16 Cal.5th at p. 768.) Under that standard, the violation is prejudicial unless we can conclude, beyond a reasonable doubt, that a jury would have found true all the aggravating facts upon which the challenged sentence was based. (*Ibid.*; *see also id.* at p. 775 [explaining that where a sentence fails to comply with section 1170, subdivision (b), the defendant is entitled to a remand for resentencing unless the appellate court "can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence"].) Put another way, Guzman is entitled to a remand unless " ' " '[n]o reasonable jury' " would have found in favor of the defendant ' " as to any of the aggravating facts relied upon by the trial court. (*Id.* at p. 775.) In conducting this analysis, moreover, we may not assume that the record contains all of the evidence that would have been presented had the aggravating circumstances been tried to a jury. (*Ibid.*)

The *Lynch* court thus set a *very* high bar. It illustrated this when it applied the standard to the facts in that case. The trial court had found, as aggravating factors, that the defendant's actions displayed a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; and the defendant posed a serious danger to society. (*Lynch*, *supra*, 16 Cal.5th at pp. 744-745.) The defendant had physically abused the victim daily for several months. (*Id.* at p. 743.) The victim was in a romantic relationship with the defendant at the time and was the mother of his child. (*Ibid.*) The defendant struck the victim with a table leg, an extension cord, and a broomstick, causing the victim to sustain multiple bruises. (*Id.* at pp. 743-744.) On one occasion, a witness observed the defendant standing over the victim with his arm drawn back, as if he were

18

getting ready to strike her, while the victim was lying on the floor with her hands raised in defense.  (*Id*. at p. 743.)  Nevertheless, our Supreme Court concluded that it was "not . . . impossible" for the jury to have found in favor of the defendant on one or more of these aggravating factors.  (*Id*. at p. 776.)

Here, the People contend that a jury would have found all three aggravating circumstances—the offenses reflected a "high degree" of cruelty and callousness (*see* Cal. Rules of Court, rule 4.421(a)(1)), the victims, June Doe and Joan Doe, were particularly vulnerable (*see* Cal. Rules of Court, rule 4.421(a)(3)), and Guzman lacked remorse—beyond a reasonable doubt.

While the trial court's findings are reasonable—we have no difficulty agreeing that Guzman's behavior was cruel and callous and that he picked on vulnerable victims—the People do not persuade us that the findings suffice under *Lynch*'s formidable standard.

The trial court found, for example, that the offenses against June Doe and Joan Doe demonstrated a high degree of cruelty and callousness because they each suffered bruising and lacerations.  However, the record includes evidence that these types of injuries are not uncommon in consensual sex.  In addition, June Doe testified that, on the night Guzman raped her, she used a dildo vaginally for 30 to 45 minutes while Guzman was asleep, which a jury could conclude exacerbated some of her injuries.  And, under *Lynch*, we cannot assume that Guzman would have declined to present *additional* mitigating evidence absent from our present record (*Lynch*, *supra*, 16 Cal.5th at p. 775)—a key problem for the People that they do not grapple with at all.

The trial court also found that June Doe and Joan Doe were particularly vulnerable victims.  A "particularly vulnerable" victim is one who is vulnerable " 'in a special or unusual degree, to an extent greater than in other cases [and is] defenseless,

19

unguarded, unprotected, accessible, assailable ... [and] susceptible to the defendant's criminal act.' " (*People v. Clark* (1990) 50 Cal.3d 583, 638.)  The court reasoned that June Doe was particularly vulnerable because she was unknowingly drugged by the defendant in her home, and Joan Doe was particularly vulnerable because Guzman provided her drugs after he found her intoxicated in her car after having had "a very hard day."

However, because use of a drug was an element of the offenses in counts two, three, and seven—rape by use of drugs (§ 261, subd. (a)(3)) and oral copulation of a person prevented from resisting by use of a drug (§ 287, subd. (i))—the fact that the victims were drugged cannot be relied upon as an aggravating factor.  (*See* Cal. Rules of Court, rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."]; *see, e.g.*, *People v. Reynolds* (1984) 154 Cal.App.3d 796, 807-808 [holding that the sentencing court improperly relied on the victims' young age to find they were particularly vulnerable and impose the upper term, where the victims' age was an element of the offense].)  Once the fact that the victims were drugged is set aside, given the subjectiveness of the applicable standard, we are unable to say that no reasonable jury could find for Guzman on the question of the vulnerability of the victims.

The trial court also relied on a third aggravating circumstance, Guzman's lack of remorse, reasonably concluding based on the existing record that he "has not taken any responsibility or shown any remorse" for his actions.  Guzman, the court found, failed to take advantage of any of the opportunities to express remorse and elected not to attend his sentencing hearing.  We need not address this third factor in light of our conclusion that, under the *Lynch* standard, a

reasonable jury could have found in Guzman's favor as to the other two aggravating circumstances relied on by the court.

**3.**

Under *Lynch*, we must also separately consider whether the record clearly indicates that the trial court would have imposed the same sentence if it had been aware of the full scope of its discretion. (*Lynch*, *supra*, 16 Cal.5th at pp. 770-774, 776-777.) Because the record does not provide the required clear indication of the trial court's intent, Guzman is entitled to a remand.

Based on his actions, the trial court described Guzman as a "manipulative sexual predator." Although the trial court's comments explained its decision to select the upper term for the counts at issue, the court's statements do not provide a clear indication of how it would have proceeded had it had to apply the Legislature's presumption in favor of a middle term. (*See Lynch*, *supra*, 16 Cal.5th at p. 777.) Indeed, for another count related to June Doe, sodomy of a person prevented from resisting by use of a drug (§ 286, subd. (i)), the court selected the middle term. As *Lynch* explained in similar circumstances, it would be " 'speculative' " to conclude that the trial court's selection of an upper term sentence based on its broad discretion clearly indicates that it would have elected to depart from the middle term otherwise mandated by the Legislature. (*Lynch*, at p. 777.) Accordingly, pursuant to section 1170, subdivision (b), Guzman is entitled to resentencing on counts two, three, and seven.

**E.**

Finally, we agree with the parties that, on remand, the trial court must correct several errors in the abstract of judgment. The court's oral pronouncement of the sentence is the judgment, and it controls over any discrepancies in the abstract

21

of judgment.  (*See People v. Mitchell* (2001) 26 Cal.4th 181, 185-186, 188; *People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14.)

First, for count two, Guzman was convicted of rape by use of drugs in violation of section 261, subdivision (a)(3), but the abstract of judgment misidentifies the offense in count two as "Intent to rape/sodomy/oral."  The abstract should be corrected to reflect that count two was for rape by use of drugs.

Second, as to count six, Guzman was convicted of kidnapping to commit rape under section 209, subdivision (b)(1), but the offense in count six is misidentified in the abstract of judgment as "Sodomy by Anesthesia or controlled substance." The abstract should be corrected to reflect that count six was for kidnapping to commit rape.

Third, with respect to count eight, Guzman was convicted of forcible rape in violation of section 261, subdivision (a)(2), but the abstract misidentifies count eight as "Kidnap and Carry away to Commit Rape."  The abstract should be corrected to indicate that count eight was for forcible rape.

Fourth, as to count nine, Guzman was convicted of forcible sexual penetration in violation of section 289, subdivision (a)(1)(A), but the abstract misidentifies the offense in count nine as "Rape of Drugged Victim."  The abstract should be corrected to indicate that count nine was for forcible sexual penetration.

Finally, for count 11, Guzman was convicted of oral copulation of an incompetent person in violation of section 287, subdivision (g), but the abstract misidentifies the statute of conviction for count 11 as section "289(e)."  The abstract should be corrected to indicate that count 11 was for a violation of section 287, subdivision (g).

22

## DISPOSITION

The case is remanded for the trial court to determine, consistent with section 654, whether to stay the sentence for count one, or in the alternative to stay the sentences for counts two, three, and four.  On remand, pursuant to section 1170, subdivision (b), the court shall also conduct further proceedings on the question of aggravating circumstances with respect to counts two, three, and seven, and for the trial court to exercise its discretion to determine whether to impose a lower term on those counts.  (*See Lynch*, *supra*, 16 Cal.5th at pp. 777-778.)  The court is further directed to prepare an amended abstract of judgment consistent with this opinion.

BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.

*People v. Guzman (A164092)*